WO          IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA


DANIELLE MELLANIE CHANDLER,      )
                                 )
                      Plaintiff, )
                                 )
          vs.                    )
                                 )
ANDREW SAUL, COMMISSIONER,       )
SECURITY ADMINISTRATION,         )
                                 )          No. 4:19-cv-0015-HRH
                      Defendant. )
_____)


O R D E R


     This is an action for judicial review of the denial of disability benefits under Title II

of the Social Security Act, 42 U.S.C. §§ 401-434.  Plaintiff Danielle Mellanie Chandler has

timely filed her opening brief,[1] to which defendant, Andrew Saul,[2] has timely responded.

Oral argument was not requested and is not deemed necessary.

Procedural Background

     On October 8, 2012, plaintiff filed an application for disability benefits under Title

II of the Social Security Act, alleging that she became disabled on May 28, 2011.  Plaintiff

_____

     [1]Docket No. 12.

     [2]Docket No. 13.

-1-

originally alleged that she was disabled due to graves disease and possibly lupus. But, at the second administrative hearing, plaintiff alleged that she was disabled due to trochanteric bursitis in both hips, lumbar degenerative disc disease, radiculopathy in both legs, and depression. Plaintiff's application was denied initially and on reconsideration. Plaintiff requested a hearing, and after an administrative hearing on November 26, 2013, an administrative law judge (ALJ) denied plaintiff's application. Plaintiff sought review of the ALJ's April 11, 2014 unfavorable decision. On October 14, 2015, the Appeals Council denied plaintiff's request for review. Plaintiff sought judicial review and on February 14, 2017, the U.S. District Court for the District of Oklahoma remanded this matter for further proceedings. Upon remand, an administrative hearing was held on March 8, 2018. After this second hearing, the ALJ again denied plaintiff's application. Plaintiff sought review of the ALJ's unfavorable decision. On March 9, 2019, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's April 13, 2018 decision the final decision of the Commissioner. On May 6, 2019, plaintiff commenced this action in which she asks the court to review the Commissioner's final decision.

## General Background

Plaintiff was born on June 7, 1978. Plaintiff was 32 years old on her alleged onset date, 35 years old at the time of the first administrative hearing, and 39 years old at the time of the second administrative hearing. Plaintiff completed tenth grade and then obtained a

GED.  Plaintiff's past relevant work was a customer service clerk, a telemarketer, a cashier, a supervisor, and a front desk clerk.

## The ALJ's Decision

The ALJ first found that plaintiff met "the insured status requirements of the Social Security Act through September 30, 2015."[3]

The ALJ then applied the five-step sequential analysis used to determine whether an individual is disabled.[4]

---

[3]Admin. Rec. at 468.

[4]The five steps are as follows:

> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled. If not, proceed to step two.
> Step two: Is the claimant's alleged impairment sufficiently severe to limit . . . her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled.  If not, proceed to step four.
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform . . . her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow . . . her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

At step one, the ALJ found that plaintiff had "not engage[d] in substantial gainful activity during the period from her alleged onset date of May 28, 2011 through her date last insured of September 30, 2015. . . ."[5]

At step two, the ALJ found that "[t]hrough the date last insured, the claimant had the following severe impairments: degenerative disc disease and obesity. . . ."[6]

At step three, the ALJ found that "[t]hrough the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. . . ."[7]

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC." Bray v. Comm'r of Social Security Admin., 554 F.3d 1219, 1222–23 (9th Cir. 2009). The ALJ found that

> through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she was able to lift or carry 20 pounds occasionally and 10 pounds frequently; occasionally climb ladders, ropes or scaffolds; occasionally stoop; sit, stand, or walk for 6 hours out of an 8-hour workday all with normal breaks; and push or pull 20 pounds occasionally and 10 pounds frequently.[8]

---

[5]Admin. Rec. at 468.

[6]Admin. Rec. at 468.

[7]Admin. Rec. at 469.

[8]Admin. Rec. at 469.

The ALJ found plaintiff's pain and symptom statements less than credible. The ALJ considered the lay testimony of Linda Parker,[9] Misty Jo Beauchaine,[10] Elizabeth Norton,[11] Leah Shankle,[12] and Joseph Chandler[13] but gave all of it little weight.[14] The ALJ gave Dr. Scheirman's and Dr. Ryan's opinions great weight.[15] The ALJ gave great weight[16] to the opinion of Dr. Shadid.[17]

At step four, the ALJ found that "[t]hrough the date last insured, the claimant was capable of performing past relevant work as a telemarketer and customer service representative."[18] This finding was based on the testimony of the vocational expert at the second administrative hearing.[19]

---

[9]Admin. Rec. at 217.

[10]Admin. Rec. at 220.

[11]Admin. Rec. at 221.

[12]Admin. Rec. at 222.

[13]Admin. Rec. at 224-225.

[14]Admin. Rec. at 475-476.

[15]Admin. Rec. at 476. The opinions of these doctors are discussed below in detail.

[16]Admin. Rec. at 477.

[17]On April 25, 2013, Tom Shadid, Ph.D., opined that plaintiff had no medically determinable mental impairments. Admin. Rec. at 87.

[18]Admin. Rec. at 477.

[19]Admin. Rec. at 477.

Thus, the ALJ concluded that "[t]he claimant was not under a disability as defined in the Social Security Act, at any time from May 28, 2011, the alleged onset date, through September 30, 2015, the date last insured. . . ."[20]

Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner. . . ."  The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards." Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).  "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).  "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Id. (quoting Andrews, 53 F.3d at 1039).  If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision. Id. But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'" Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

---

[20]Admin. Rec. at 478.

Discussion

Plaintiff first argues that the ALJ erred in finding her pain and symptom statements less than credible. "An ALJ engages in a two-step analysis" in evaluating "a claimant's testimony regarding subjective pain or symptoms. . . ." Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014). "'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). "In this analysis, the claimant is not required to show 'that her impairment could reasonably be expected to cause the severity of the symptom []he has alleged; []he need only show that it could reasonably have caused some degree of the symptom.'" Id. (quoting Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996)). "Nor must a claimant produce 'objective medical evidence of the pain or fatigue itself, or the severity thereof.'" Id. (quoting Smolen, 80 F.3d at 1282). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1014-15 (quoting Smolen, 80 F.3d at 1281). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" Id. at 1015 (quoting Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)). "'General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's

complaints.'"  Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010) (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)).

Plaintiff argues that the first reason the ALJ gave for finding her pain and symptom statements less than credible was because they were inconsistent with her 2011 lumbar spine MRI.  The ALJ stated that her RFC was "supported by an MRI of the lumbar spine noting a small disc protrusion, mild disc bulge, and early degenerative facet changes in October 2011[.]"[21]  This appears to have been the ALJ's way of saying that plaintiff's pain and symptom statements were not supported by the medical evidence, in particular the 2011 lumbar spine MRI.  Plaintiff argues that this was not a clear and convincing reason because she had another MRI of her lumbar spine, which was done in 2013, and the results of which were: "1.  Degenerative disc disease L5-S1 with reactive bone marrow edema.  2.  Multilevel broad-based disc bulges with bearing degrees of central canal stenosis and neural foraminal narrowing."[22]  Plaintiff argues that the 2013 MRI clearly showed a worsening condition and that the ALJ "cherry-picked" the 2011 MRI and ignored the 2013 MRI as well as important findings from Dr. Ahmadinia, the spine surgeon, and her lumbar CT spine.  Plaintiff complains that the ALJ only noted that Dr. Ahmadinia's assessment was lower back pain but did not acknowledge that he had also noted that plaintiff had "L5-S1 disc herniation and

_____

[21]Admin. Rec. at 477.

[22]Admin. Rec. at 400.

stenosis."[23]  Plaintiff also contends that the ALJ ignored the fact that the CT scan of her lumbar spine in 2015 "demonstrate[d] changes of the L5-S1 disc.  There is also evidence of L5-S1 loss of disc height and facet arthropathy.  There is also evidence of a possible disc herniation causing stenosis at L5-S1 which is also calcified."[24]

To the extent the ALJ discounted plaintiff's pain and symptom statements because they were inconsistent with her 2011 MRI, this was not a clear and convincing reason.  As plaintiff points out, the results of her 2013 MRI and her 2015 CT scan showed that her low back condition was getting worse.  Although the ALJ mentioned both the 2013 MRI and the 2015 CT scan in her discussion of the medical evidence,[25] the ALJ did not seem to take these objective findings into account when assessing whether there was objective medical evidence supporting plaintiff's subjective complaints.  Rather, the ALJ seemed to focus on only the 2011 MRI.  In assessing credibility, the ALJ must "'[f]irst . . . determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'"  Garrison, 759 F.3d at 1014 (quoting Lingenfelter, 504 F.3d at 1035-36).  The ALJ does not meet this requirement by focusing on only one piece of objective medical evidence.

---

[23]Admin. Rec. at 768.

[24]Admin. Rec. at 768.

[25]Admin. Rec at 473-474.

The next reason given by the ALJ for discounting plaintiff's pain and symptom statements was that "although the claimant treated for low back pain, had some abnormal MRI findings, and reported continued pain despite conservative treatment, the claimant reported wanting to continue conservative treatment. . . ."[26] Plaintiff argues that the ALJ improperly applied SSR 82-59 in reaching this conclusion.[27] "SSR 82–59 . . . provides that an ALJ may deny benefits to a claimant who has a disability if the claimant unjustifiably fails to follow prescribed treatment that is clearly expected to restore capacity to engage in any [substantial gainful activity]." Molina v. Astrue, 674 F.3d 1104, 1114 n.6 (9th Cir. 2012). In other words, "Social Security Ruling 82–59 delineates the circumstances in which the [Commissioner] can deny benefits on the basis that the claimant has failed to follow prescribed treatment." Roberts v. Shalala, 66 F.3d 179, 183 (9th Cir. 1995). The rule has no application in this case because the Commissioner did not deny plaintiff's benefits because she failed to follow prescribed treatment. Molina, 674 F.3d at 1114 n.6. Rather, plaintiff's alleged "failure to seek treatment . . . was merely a factor in the ALJ's credibility determination." Id. That does not mean, however, that plaintiff's wanting to pursue

---

[26]Admin. Rec. at 475. Defendant also contends that plaintiff declined other "'possible changes [her providers] could attempt to obtain better control[.]'" Defendant's Responsive Brief at 8, Docket No. 13 (quoting Admin. Rec. 796, 775). But, the ALJ did not consider or mention these other possible changes. The court can only "review the ALJ's decision based on the reasoning and factual findings offered by the ALJ. . . ." Bray, 554 F.3d at 1225.

[27]SSR 82-59 was rescinded on October 29, 2018, but this case was decided prior to that.

conservative treatment was a clear and convincing reason for the ALJ to discount plaintiff's pain and symptom statements.

"[A] conservative course of treatment can undermine allegations of debilitating pain[.]" Carmickle v. Comm'r, Social Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008). However, "such fact is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment." Id. The ALJ relied on the fact that in 2015, plaintiff elected to continue with conservative treatment rather than going forward with surgery. Plaintiff testified that she made this decision because the doctor

> said [the surgery] would alleviate some of the low back pain, but the risk in that is also that it could cause further injury up higher in my back, in the mid section of my back. At that time I didn't feel like that risk was worth [it.] I just didn't feel like it was worth it to cause more problems.[28]

Plaintiff had a good reason for not pursuing the more aggressive treatment option. Moreover, Dr. Ahmadinia did not prescribe surgery but rather "discussed . . . treatment options" with plaintiff, one of which was surgery.[29] The fact that plaintiff did not elect to have spinal fusion and instead decided to continue with more conservative treatment was not a clear and convincing reason for finding her pain and symptom statements less than credible.

The next reason the ALJ gave for finding plaintiff's pain and symptom statements less than credible was that there was not sufficient evidence to support her reports of bilateral feet

---

[28]Admin. Rec. at 504.

[29]Admin. Rec. at 769.

numbness. Specifically, the ALJ noted that "there was no lower extremity electromyography examination results to support these complain[ts.]"[30] Plaintiff argues that this was not a clear and convincing reason because an ALJ "may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." Lingenfelter, 504 F.3d at 1036 (citation omitted). Yet, according to plaintiff, that is exactly what the ALJ did.

Defendant, however, argues that this was a clear and convincing reason because the only EMG results in the record were normal.[31] Defendant also contends that plaintiff was representing to providers that her peripheral neuropathy had been confirmed by an EMG,[32] which was simply not true. Defendant insists that the ALJ properly relied on the lack of objective medical evidence as an indicator of whether plaintiff's subjective complaints were credible.

But, as plaintiff points out, the ALJ did not mention either the normal EMG or that plaintiff had told a provider in December 2016 that her peripheral neuropathy had been confirmed by an EMG. "Long-standing principles of administrative law require [the court] to review the ALJ's decision based on the reasoning and factual findings offered by the

---

[30]Admin. Rec. at 475.

[31]Admin. Rec. at 263.

[32]Admin. Rec. at 900.

ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray, 554 F.3d at 1225.

Here, the ALJ found that plaintiff's reports of bilateral feet numbness were not supported by objective medical evidence. But, an ALJ "may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence[,]" Lingenfelter, 504 F.3d at 1036 (citation omitted). This was not a clear and convincing reason for finding plaintiff's pain and symptom statements less than credible.

The next reason given by the ALJ for discounting plaintiff's statements was that "the file is void of any consistent treatment for her low back, neck, or numbness in 2014[.]"[33] An ALJ may discount a claimant's pain and symptom statements based on a lack of consistent treatment. Burch v. Barnhart, 400 F.3d 676, 681-82 (9th Cir. 2005). But, plaintiff argues that she did seek consistent treatment for her pain and numbness in 2014. In 2014, plaintiff saw her providers at Oklahoma Pain and Wellness on May 8, August 4, October 3, and on December 3.[34] She argues that this was consistent treatment.

Defendant argues that it is significant that plaintiff did not seek any treatment for her pain and numbness for the first six months of 2014. Defendant points out that plaintiff had her first administrative hearing in November 2013 and that she did not see her provider again until one month after the ALJ issued an unfavorable decision in April 2014. Defendant

---

[33]Admin. Rec. at 475.

[34]Admin. Rec. at 773, 789, 791-792, 795-796.

appears to be suggesting that plaintiff stopped seeing her pain management provider because she believed that she was going to be granted disability benefits and then only started seeing her provider again after her application was denied.

But, this is a "post hoc rationalization[] that attempt[s] to intuit what the adjudicator may have been thinking." Bray, 554 F.3d at 1225. The ALJ never tied plaintiff's alleged lack of treatment in 2014 to the timing of plaintiff's administrative hearing and the ALJ's 2014 decision. Rather, the ALJ found that plaintiff had not consistently sought treatment in 2014 for her pain and numbness. But because there was not a lack of consistent treatment in 2014, this was not a clear and convincing reason.

The next reason given by the ALJ for discounting plaintiff's pain and symptom statements was that plaintiff's use of her spinal cord stimulator was inconsistent. Plaintiff argues that this was not a clear and convincing reason. The ALJ cited to plaintiff's May 8, 2014 and January 15, 2015 visits with Oklahoma Pain and Wellness in support of this finding.[35] At the May 8, 2014 visit, it was noted that plaintiff reported that the stimulator "is not adequately covering/controlling her pain" and it was reprogrammed "to obtain better coverage. . . ."[36] At the January 15, 2015 visit, plaintiff reported

> that she uses [her spine stimulator] some days all day, but usually just uses it 1-2 days a week. She uses SCS for a few days at a[] time & then may not use it for a few days. Pain in her feet changes so she adjusts SCS according to her pain level.

---

[35]Admin. Rec. at 475.

[36]Admin. Rec. at 789.

> SCS does help with muscle spasms. . . . Patient states that she has not had it reprogrammed in 2 months. Prior to last appointment, patient went 6 months without being able to use it.[37]

Plaintiff argues that these two references do not support a finding that she was using her spinal cord stimulator "inconsistently." Moreover, she argues that this finding ignores the other evidence in the record that shows as time progressed, the stimulator only helped "slightly"[38] and eventually began to actually increase her pain.[39]

As defendant points out, after plaintiff had her spinal cord stimulator reprogrammed in May 2014, she had three appointments with Oklahoma Pain and Wellness at which she did not report any problems with her stimulator. But, that does not mean that this was a clear and convincing reason. In January 2015, she reported that she had not been able to use the stimulator for 6 months. And, at the second administrative hearing, she testified that the permanent spinal cord stimulator had never worked, that only the trial one had worked and that the permanent spinal cord stimulator had caused severe pain.[40] This testimony raised a question as to the effectiveness of the spinal cord stimulator and the ALJ might have explored this matter at the second hearing. But, the evidence that is in the record is not sufficient to support the ALJ's finding that plaintiff's use of her spinal cord stimulator was

---

[37]Admin. Rec. at 797.

[38]Admin. Rec. at 801.

[39]Admin. Rec. at 778, 783, 914, 917, 921.

[40]Admin. Rec. at 503.

inconsistent. This was not a clear and convincing reason to find plaintiff's pain and symptom statements less than credible.

The ALJ also found plaintiff's pain and symptom statements less than credible because of her inconsistent use of pain medications. Specifically, the ALJ stated that the record "indicated [that plaintiff] had not been consistently . . . taking her prescribed medications. . . ."[41] The only evidence the ALJ cited in support of this finding were the treatment notes from plaintiff's May 8, 2014 and January 15, 2015 visits with Oklahoma Pain and Wellness.[42] On May 8, 2014, plaintiff reported that she had "not been taking Lyrica recently due to cost,"[43] but as plaintiff points out, the Ninth Circuit has "proscribed the rejection of a claimant's complaints for lack of treatment when the record establishes that the claimant could not afford it[.]" Regennitter v. Comm'r of Social Sec. Admin., 166 F.3d 1294, 1297 (9th Cir. 1999). On January 15, 2015, it was noted that plaintiff "state[d] that she was taking Percocet & using the Fentanyl patch at her last appointment. She could not account for why her UDS was negative for Oxycodone."[44] Plaintiff argues that this one, isolated incident is insufficient evidence to support the ALJ's finding that she was not taking her medication consistently.

--------

[41] Admin. Rec. at 475.

[42] Admin. Rec. at 475.

[43] Admin. Rec. at 789.

[44] Admin. Rec. at 797.

Defendant argues that this was a clear and convincing reason because plaintiff had other urine screenings that showed abnormalities. Defendant points out that on August 4, 2014, plaintiff's urine screening indicated "Adulterant Results,"[45] which defendant contends suggests possible tampering with the sample. And, defendant points out that in December 2016, plaintiff was dismissed from care at Precision Pain because her urine screening was positive for meth and amphetamine.[46]

But this evidence is not evidence that plaintiff was inconsistently taking her medication. It is evidence that plaintiff may have been taking medication that was not prescribed, but the ALJ did not discount plaintiff's pain and symptom statements for this reason. As has already been observed, "[l]ong-standing principles of administrative law require [the court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ. . . ." Bray, 554 F.3d at 1225. There was not substantial evidence supporting the ALJ's finding that plaintiff was not consistently using her medication. Thus, this was not a clear and convincing reason for discounting plaintiff's pain and symptom statements.

Finally, the ALJ found plaintiff's pain and symptom statements less than credible because "following her spinal cord stimulator, she reported 70% pain improvement[.]"[47]

_____

[45]Admin. Rec. at 793.

[46]Admin. Rec. at 923.

[47]Admin. Rec. 475.

This was not a clear and convincing reason because the record shows that plaintiff reported the 70% improvement after the placement of the <u>trial</u> stimulator[48] but that the permanent stimulator provided only slight relief for a time and then began to actually increase her pain. An ALJ may not "focus[] on . . . temporary periods and isolated aspects of [a claimant's] improvement that were not representative of the continuing severity of her symptoms." <u>Attmore v. Colvin</u>, 827 F.3d 872, 879 (9th Cir. 2016).

In sum, none of the reasons the ALJ gave for finding plaintiff's pain and symptom statements less than credible were clear and convincing. Thus, the ALJ erred as to plaintiff's credibility.

Plaintiff also argues that the ALJ erred as to Dr. Scheirman's and Dr. Ryan's opinions. On February 7, 2013, Katherine Scheirman, M.D., opined that plaintiff could occasionally lift/carry 20 pounds; frequently lift/carry 10 pounds; stand/walk for 6 hours; sit for 6 hours; was unlimited as to pushing/pulling; was unlimited as to climbing ramps/stairs, balancing, kneeling, crouching, and crawling; and could occasionally climb ladders/ropes/scaffolds and stoop.[49] On May 2, 2013, Colleen Ryan, M.D., affirmed the limitations assessed by Dr. Scheirman.[50] The ALJ gave these opinions "great weight" because these doctors "considered

---

[48]Admin. Rec. at 383.

[49]Admin. Rec. at 76.

[50]Admin. Rec. at 86-87.

the claimant[']s self-reported worsening leg pain, use of a motorized cart, inability to shower, inability to do dishes or laundry, and need to alternate sitting and standing."[51]

Plaintiff argues that the ALJ should not have given these opinions great weight or used them as the basis for the hypothetical because they were stale. As plaintiff points out, there was 2 1/2 years of additional medical evidence beyond what these two doctors reviewed. As one court has observed, "while [a doctor's] opinion may have been supported by and consistent with the medical evidence of record when he gave it," when "it does not account for material objective evidence developed long afterward[,]" the ALJ's reliance on that opinion is "troubling." Chapo v. Astrue, 682 F.3d 1285, 1292-93 (10th Cir. 2012) (quotation marks omitted). Here, plaintiff argues that the evidence in the record that was developed after Dr. Scheirman and Dr. Ryan reviewed it showed a worsening lumbar condition and thus the ALJ should have obtained an updated medical opinion.

Defendant, however, points out that "because state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision." Chandler v. Comm'r of Social Sec., 667 F.3d 356, 361 (3rd Cir. 2011). "The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it." Id. Moreover, defendant reminds plaintiff that while "an ALJ's RFC assessment . . . must be supported by some medical evidence of the claimant's ability to function in the workplace, . . . there is no requirement that an RFC

---

[51]Admin. Rec. at 476.

finding be supported by a specific medical opinion." <u>Hensley v. Colvin</u>, 829 F.3d 926, 932 (8th Cir. 2016) (internal citation omitted). Thus, defendant argues that the ALJ did not err by relying on the opinions of the state agency physicians.

The court is troubled by the fact that the only medical opinions on which the ALJ relied were opinions that were more than 2 1/2 years old. It would have been preferable had the ALJ obtained an updated medical opinion, either via a consultative examination or by having a medical expert review the record and testify at the second administrative hearing.

But even if the ALJ did not err in giving these opinions great weight, the ALJ did err as to plaintiff's credibility. Thus, the court must consider whether to remand this matter for further proceedings or for an award of benefits. The court follows a three-step analysis to determine whether a remand for an award of benefits would be appropriate. "First, [the court] must conclude that 'the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" <u>Brown-Hunter v. Colvin</u>, 806 F.3d 487, 495 (9th Cir. 2015) (quoting <u>Garrison</u>, 759 F.3d at 1020). "Second, [the court] must conclude that 'the record has been fully developed and further administrative proceedings would serve no useful purpose.'" <u>Id.</u> (quoting <u>Garrison</u>, 759 F.3d at 1020). "Third, [the court] must conclude that 'if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.'" <u>Id.</u> (quoting <u>Garrison</u>, 759 F.3d at 1021). But, "even if all three requirements are met, [the court] retain[s] 'flexibility' in determining the appropriate remedy" and "may remand on an open record for

further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" Id. (quoting Garrison, 759 F.3d at 1021).

Here, a remand for benefits is appropriate. No further proceedings are necessary because Heald, the vocational expert at the second administrative hearing, testified that if plaintiff's limitations to which she testified in terms of not being able to walk for long distances, not being able to sit for long periods, and having limited concentration were credited, plaintiff would not be able to perform her past relevant work.[52] Heald also testified there would be no other jobs that plaintiff could perform because she testified "that she sits in a recliner. There aren't recliners at the job sites. And she said that she could sit for one hour at a time and sedentary work, you're required to sit for two hours before you will get a break."[53] Thus, if plaintiff's pain and symptom statements were credited as true, she would be disabled.

## Conclusion

The decision of the Commissioner is reversed, and this matter is remanded for an award of benefits.

DATED at Anchorage, Alaska, this 5th day of November, 2019.

/s/ H. Russel Holland
United States District Judge

---

[52]Admin. Rec. at 517.

[53]Admin. Rec. at 517.